I'm Andrew Wild, Benjamin Wild and Mazur. I'm appearing on behalf of Appellants, and I'd like to reserve about five minutes for rebuttal, if necessary. This case arose in the following context. Mr. Meek worked as general counsel for Hawaii Management Alliance Association, HMAA, and related companies from 1995 to 1999. He was deeply involved in every aspect of their business. He had primary responsibility for broker relations. He worked closely and intimately with the top management of the plaintiffs in marketing their health care insurance products in the state of Hawaii. He left in 1999 and took a job in Nevada. Two years later, the plaintiffs confront knowledge that Mr. Meek is involved in a company that is starting to come into Hawaii under the name of HMAA and making introductions of the top people in that company to their brokers. That is how this arose. Plaintiffs are seeking to have a trial, the right to get to trial, on their claim for injunctive relief. The district court's ruling did not address the correct standards and did not allow the plaintiffs to develop crucial evidence. And what we are asking for by this appeal is for the opportunity for the subgrant of summary judgment to be reversed and for an opportunity to get to trial on these issues on the correct standard and with the opportunity to develop the evidence that will be necessary. Refresh my memory. Did you make a 56-F request? Yes, we did. Thank you. And that 56-F I will be addressing specifically. Now, how did the district court go astray in its analysis of this issue? And first of all, there are four primary ways. First, it required that plaintiffs had to make a showing of damages to justify their claims, even though the claims were for injunctive relief. Now, secondly, it required a showing of specific adversity in the context of showing substantial relationship between two successive relationships. It's a standard which isn't part of the law and is contrary to the law of this circuit, Hawaii and California. Now, are you arguing that Hawaii law governs? Are you arguing that California governs? So far, for the purpose of the oral argument, you have not specified which State's law is governing. Your Honor, it is our position that, in reality, a correct analysis would show that the Hawaii and California law do not differ on the relevant points except for one possible area, and that is the issue of whether written consent is required for a conflict of interest. I don't think that that's really that important because there were factual issues on the disputed facts on the issue of consent anyway, so I don't think we need to get there. However, to the extent you do need to get there, it's our position that California law should apply because it is not inconsistent with Hawaii. But realistically, we believe that this case could be decided without any choice of law analysis. Okay. I get it. If it becomes relevant, I just want to signal to you my position on that. It looks to me as though Hawaii law governs, but I'm not sure it actually makes a difference. Okay. I'm with you. That's correct. And I believe that the – I understand the analysis both ways. I think that the – it would be an interesting question if Hawaii were to say that it had a specific policy saying that it wanted to have a different interpretation of the substantial relationship rule than held by California. That's just not the case, so I don't think we need to get there. Okay. I'm sorry to detain you. And then one – another way in which the district court went astray was in its adoption of standards that really pertained to trade secrets cases rather than to attorney-successive representation cases. And finally, there's the denial of crucial discovery. Taking these four issues in order, the first and easiest way of disposing of this was clearly erroneous. You don't need to show damages in order to obtain injunctive relief. For the district court to have required the plaintiffs to do so and say it was completely unfair and inappropriate, the issue was imminent harm, not the issue of whether harm had actually been caused. We've cited numerous cases for that proposition. It's effectively conceded by the appellees in their brief. They have – and they give reference to the fact that imminent harm is sufficient. That was not the standard that was adopted by the district court. So – Well, wasn't the court dealing with your breach of fiduciary duty claim that made that finding? That is – yes, but the breach of fiduciary claim was a breach of fiduciary claim that sought purely injunctive relief, not damages. And it is our position that a breach of fiduciary claim that seeks purely injunctive relief would require a showing not of damages, but of imminent harm. The – this issue of whether damage had to be shown, in our view, tainted the entire analysis, because later on, as we look at the question of what the court considered to be the standard for successive representation and substantial relationship, the court is looking to see whether actual harm has occurred, missing the fact that that is not the interest at stake when one is dealing with the ethical duties of an attorney. It is the idea that you preclude and prevent the disclosure of confidential information. You don't have to show that it's happened. As a matter of fact, the statute does not allow that showing to evade. The – turning now to the issue of the question of what the standard was that was applied for the subject for – I'm sorry, for substantial relationship and material adversity. But before you get to that, though, wasn't Mr. Meek acting for – acting for the Hawaii Management Group, Hawaii Management Alliance? He was acting more as a management employee, not a lawyer. When we talk about that, there's – Your Honor, yes in some ways, no in others. He was general counsel in his first employment. That's undisputed. He received attorney-client communications. That's undisputed. But more importantly, the case law, and particularly the Otaka case from Hawaii, says that one looks to the actual nature of the relationship. And we – even if there is not a formal written attorney-client agreement, there is nonetheless – you look at what the nature of the representation was. There, there was an attempt by the attorney to say, well, I was acting really as a broker. The court – the Hawaii court said there, no, we're going to look practically at the relationship. This person provided services far beyond merely being a broker. He was really in a fiduciary capacity. Well, let's just – let's assume for the sake of argument that he wasn't an attorney. Your entire case goes away, right? Your Honor? If he's not an attorney. Yes. He was an attorney. I know he was. But, I mean, if he – assuming for the sake – hypothetically that he's not an attorney, you don't have a basis – you don't have a cause of action here, right? I do not believe there's a – I do not believe there's a retainer agreement, no. Yeah. Okay. But there's also – there are two – But – so getting back to Judge Mahan's question, I don't want to divert him from his line of thought, but he really – as you described it, he was doing marketing. He developed relationships. He did other things for your company that are more management-related than classically attorney. Now, that may not be attorney activities. Now, it may be that we can't draw a fine line, but on the other hand, in protecting client confidences, we can't go beyond the line of what confidences are invested in the attorney as an attorney, don't you agree? Absolutely correct, Your Honor. And there is an issue – What are those? What draws that line? I think that – No, no. What are those in this case? Well, we can't – that gets to the impermissible level of inquiry because we cannot say with specificity what particular attorney-client communications there are that should not be disclosed. That goes directly to the rule. We don't ever require that. Right. Let me counter with another rule, then. The other rule is you cannot bind an attorney – you can't prevent an attorney from getting successive employment. You cannot have – you can't say either by a law firm covenant not to compete or other covenant not to compete, you can't stop a lawyer from going to another firm, representing similar clients, using the knowledge perhaps. The lawyer is bound to keep confidences, but you can't prevent that lawyer from obtaining a job. Your Honor, I believe – It's an ethical rule, the same ethical rule – from the same ethical rules that you're relying on. No, Your Honor, I believe that that's an overstatement of where the law is. I don't think that it's a blanket rule either way. Neither – there's not a blanket rule that prohibits employment by an adversary, nor is there a blanket rule that says it is always all right. I think that the correct balance is to be found in the Maritrans case, which is cited in our papers. It has been cited and relied upon by this Court in the Damron case and other cases. And in the Maritrans case, I think that its language is excellent for addressing this issue, in which it says that situations may well exist where the danger of revelation of the confidences of a former client is so great that injunctive relief is warranted. This was a situation in which an attorney had been general counsel for the Maritrans company for about 10 years, then started working for competitors. And it wasn't with regard to specific litigation. The Court found that the – on the facts before it, that enough was shown for – to justify the imposition of injunctive relief. But your complaint with Mr. Meeks – is it Meeks or Meeks? Mr. Meeks. Mr. Meeks seems to be, well, wait, he's over in Hawaii now. He knows people. He knows, you know, the president of this company or this or that. He knows people in the industry. He's able to facilitate the employment – or facilitate the entry into the Hawaii market of the – of his new employer. And that seems to be – it's not like, well, wait, you know how to make, you know, Colgate toothpaste. You've got a trade secret or something like that. Or you picked up something in litigation that was an attorney-client privilege. So there's no trade secret. There's no – it seems like there's no privileged information. It's the fact that now you know people. You have an in with this one. You have met the Hawaii – assuming there's a commissioner of industry or something – commissioner of insurance. So that's why we don't like about you, Mr. Meeks, is that you know people in Hawaii that we introduced you to. Now you're trying to use that information to – with your new employer. Your Honor, if that were the only information that had been induced at the district court, I would think that that would be a significant failure in the plaintiff's proof. Fortunately, for my case, that's not what the record was. Well, what – I guess, you know, it's very tough for us to analyze this case in the abstract. I think – I think that probably puzzled the district court, too, because this does resemble the typical suit we get here. And usually it's an unsuccessful suit where somebody tries to protect a contact list. You know, you have some – a salesperson who is – who goes to work for a competitor. And they say, you have the list. And unless there's some agreement that's enforceable under state law, we usually say, well, that's not enough. There's no common law right to protect a list of people. Here it seemed to be a relationship. All the major complaints – and I agree with Judge Mayen in the way I read this. The argument seems to be this guy – this guy has such great contacts in Hawaii. We've got to stop him from coming. And contacts are not protected by the attorney-client privilege. Communications are. Agreed. But let me draw the distinction. So what – give me the nature of communications that you're trying to – I – the fact that they were frustrated is that we – Let me try to – let me try to draw the distinction in this way. Let us assume that the – that we had a set of files at my client's offices, one file – one set of files of trade secrets, contact lists, buying patterns, whatever it may be. Those are set in – those are in one place. Then there's a set of files in the general counsel's office, which include all of his notes of, here's what we know in terms of how we structure your contract negotiations with these brokers. Here's some things you better know about them. Here's some things that we're going to let you know in confidence about the brokers, about our own goals, about our long-term strategy, about where we intend to position the market, et cetera. I agree that the – that the documents, contact lists, knowledge of buying patterns, all of those things in those other files may very well not be subject to the attorney-client privilege and – in that area of confidence. But I strenuously assert that those other kinds of communications are. Now – Corporate strategy? These people are located in the general counsel's office. Because they were – and that is who – and that is what this General – They move them out of the general counsel's office, and they're no longer protected. If they had been moved out, but they are not moved out. They – our clients – See, what you're saying to us is that these are attorney-client communications. Trust me, they are attorney-client communications. That's what I'm saying. I understand, but let me finish. Trust me, these are attorney-client communications. And we say, what are they? Well, they're too secret to tell you. Okay. And now it seems like you're saying they're attorney-client communications because they're located in the general counsel's office. No, that's just the – If they were located in the vice president's office, then they wouldn't be. But because we move the files, or because the files are located in the general counsel's office, that automatically makes them attorney-client communications. No, that is not what I'm saying, and to the extent that my example was meant – was taken that way, then it's a poor example. What I mean to say is simply that the way in which a corporation would typically operate, and what is reasonable to assume, is that it will communicate certain kinds of things that are not considered privileged, which might be, it's contactless. But when top management is sitting with its general counsel and saying, here's our long-term strategy, here's how we need to position these negotiations, here's what you need to know about how we want to handle ongoing competition threats, those are confidences that are being shared with general counsel, and that top management has every right to expect that they would be held confidential. Now, how do we introduce evidence? The reason this is a tricky and difficult case is, everything that you've so far described in terms of what was communicated to the general counsel, and you say is protected by attorney-client privilege, could just as easily have been communicated to the vice president in charge of negotiations, who was not a lawyer, because what you're talking about is corporate strategy, negotiations, and so on. And if we construe the lawyer fiduciary responsibility, and the desire to protect secrets and so on as broadly as you want, I think it's going to be very difficult for anyone who has ever been a general counsel, who has been, in your words, deeply and intimately involved in every aspect of this business, as many general counsels are, ever to seek any employment with any competing business. Isn't that right? Your Honor, it could, it creates certain difficulties, I agree. But those difficulties can be... Aren't we prohibiting attorneys from working in Silicon Valley? I mean... No, I don't think so, Your Honor. Because general counsel, if you're a general counsel, let's just take the, because there's so much, so many people leaving jobs and going to competitors in Silicon Valley, what you're saying is if you take the job as a general counsel, that's it. You've got to move, you've got to get out of the area. You can't work in this industry ever again. And that's a very broad rule. If that were the, Your Honor, if we were up here on a rule that had precluded, that where the district court had said, I'm finding that under all circumstances, Mr. V. cannot work and that there's no limitations on an injunction against him, that would be a very valid argument. But we're in exactly the reverse situation here. In this situation, the district court said, under no circumstances can you ever find that this man breached his confidence. And I suggest that that's quite the opposite. Under no circumstances, under the evidence that you put in front of the judge. Yeah. Let's say, let me, let me go back to where you started on the damage question. You aren't entitled to an injunction if there is an adequate remedy in the form of damages. Why don't you have a remedy, which you're arguing is an anticipatory breach of fiduciary duty. You're, you're, you're arguing that he's going to take this job and he's going to take some knowledge that he took from a contract that he executed half a decade ago and harm you. Why don't you, why, given, given the fact that we, you cannot control his employment ethically, you can't stop him from getting a job. Why don't you have an adequate remedy if he uses, if he actually breaches the fiduciary duty, you can sue the company and you can sue him. Why is that an adequate remedy? It's an excellent question, Your Honor, and I have a three-word answer. Lawyers are different. The standard is different when you're a lawyer. And that is very clear from the cases. You do not have to wait. The danger is in putting the attorney in the position where there is the potential or temptation to use the confidences. And the law is quite clear that when you find that situation, we conclusively presume that the confidences will pass and that there is an entitlement to the injunctive relief. Damages are not going to be adequate, and it's not the standard that has evolved. Lawyers are different. But injunctions are also different. And I now am agreeing with the point you made earlier. I don't think you need to show damages as a prerequisite for getting an injunction. What you do need to show, as you said, is imminent threat of irreparable harm. The imminent threat of irreparable harm is by the sharing of confidences. A substantial relationship test is all that is necessary to protect that concern. How do we judge that with that? I understand your dilemma in a sense. But I just don't think we can take a trust-me standard on the fact that these are confidences that will cause, if disclosed, will cause irreparable harm. How can we do that? You say we can't disclose the secrets. You have to trust us that they're important. I think that that's also the case. There has to be some mechanism of making a showing to the district court, whether it's in camera or somewhere, that how these – what confidences you're talking about. You seem to be making a generic argument. We're – because we look at the relatedness of the representations, the success of employment, to see whether it is likely under the context that confidences would be shared, whether there would be a temptation to share the confidences. We don't look and see whether it has, in fact, occurred. That is the standard in the law. I understand that, but let's take, for example, just give me – let's give you a hypothetical example so you can help me out with this. Let's say that – let's say that somebody leaves the company and shares the corporate strategy with another company. What's the damage of that, given most companies – in most areas, the corporate strategy is fairly obvious that – for a business. Tell me what makes your company different. With regard to corporate strategy? Yeah. Your Honor, I can give some examples. For – as a possibility, when you're dealing with a highly regulated industry such as the insurance industry, there could be any of a number of issues with regard to how to approach the regulatory authorities, ways in which one would be looking at reports, things that would be – that one goes to the attorney and says, are we vulnerable on this issue? An attorney gives an honest and careful analysis and says, we may be vulnerable. We should address it this way. We should protect it this way. The attorney is the person who you turn to to show your vulnerable side. That's the one person in the organization who, above all others, you need to be able to say, I want to take you into my confidence and show you where I could be hurt so you can protect me. That's the person who then is going over to the competitor. That's not right. It can – now, I am not saying that there needs to be a blanket rule. There doesn't need to be a blanket rule. All I'm saying is that we introduced enough on this showing to get past the summary judgment hurdle. We could lose when these factors are weighed in the balance. But we were entitled to get to the trial. That is all we are suggesting at this stage of the game. Our questions have taken you over your time, but we'll give you some time for rebuttal. Dr. Pick. Good morning, Your Honors. Henry Noyes on behalf of Mr. Meek. May it please the Court, I'm going to address a couple of issues. I'm not going to repeat the material that's in the briefs, but let me read from you a quote from Plaintiff's reply brief, which obviously we didn't have a chance to respond to. Quote, "'Appellants' seek nothing beyond that which any client has a right to expect. This is in their conclusion. That his former attorney will not accept adverse employment. That is their position. Why do I read that quote? And I'll come back to it hopefully at the end of my remarks if I get to where I want to go, because understanding this case requires us to understand how we got to that quote. It took us all this time of litigation, it took all the motions that we had before Judge Ilston to get to the point where it was revealed what we had been explaining to Judge Ilston we understand plaintiffs to be urging, which is once you leave employment as an attorney in House counsel, although obviously this rule would apply to law firms as well, and you've acquired information about a business, and it's undisputed that Mr. Meek was general counsel. There's no dispute about that. There never was a dispute in the record about it. Once you've done that, plaintiff's position is you can never seek employment with anybody who is a competitor, whether directly or just in the same general field, in this case in the insurance field in Hawaii, unless you get the consent of the employer. Now, in this case, we have information in the record that there was consent. In fact, it was plaintiffs, chairman of the board, and director who called and contacted Mr. Meek's current employers and said you should hire him. Putting all of that aside, it took us a long time to get to that point. When this case was first filed, Mr. Meek had been away from employment with plaintiffs since 1999. In 2002, they filed their action. They actually alleged in their initial complaint that he had in fact done all of these bad things, meaning taken actual confidences and in fact disclosed them and used them to take business from the plaintiffs. We then pursued discovery about that because we knew that wasn't true. And we went through a series of motions where Judge Ilston, on more than one occasion, ordered them to produce the information that it was that he had supposedly disclosed and to describe the matters that were at issue. Rather than producing that information, plaintiffs amended their complaint twice. By the time we end up with the second amended complaint, which is the complaint at issue in the summary judgment motion, they're no longer seeking any damages. They've dismissed with prejudice all of their claims alleging that he had in fact done something wrong. And we get to their four causes of action, seeking injunctive relief to prevent him from seeking any employment in the State of Hawaii in which he would have any of his brokers, their customers, or anybody in the insurance industry. Why is that significant? Because, among other things, the questions that you've asked go to the standard that's applied here. The district court, Judge Ilston, got it right. There were four causes of action in the complaint at issue. Two of those were breach of fiduciary duty and professional negligence. We argued to get rid of, and on summary judgment sought to get judgment on all the causes of action. One cause of action was injunctive relief. So Judge Ilston properly said, as we argued, for breach of fiduciary duty and professional negligence as an independent, standalone cause of action, you have to establish damages. Same laws, same in Hawaii and California. They conceded there were no actual damages. So we move to injunctive relief. Judge Ilston got that standard right, too. She noted in a footnote that she was – there is a different standard for a cause of action standalone for breach of fiduciary duty versus injunctive relief. So now we get to injunctive relief, in which the issue before the district court was essentially, is there material adversity and is there a substantial relationship between the two matters. And I'll read the language of the Hawaii rule of professional conduct, Rule 1.9. A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client. Material adversity and same or substantial relationship. The problem here is that they're arguing that the matters to be considered, and again, I'll read from their reply brief, are not a litigation, a contract, a customer that was at issue that Mr. Meek worked on, about which he has information that is relevant today, six years later. They're arguing that it's his employment with plaintiffs and whatever employment he has today, and that's what you have to compare. And they say in their reply brief at page 21, it is Meek's employment by appellants and his current employers that must be examined to see if they are substantially related matters. Not any single transaction which Meek may have worked. No court anywhere, no standard anywhere has said that's the inquiry that you must make. If it was, as you rightly pointed out, many of the lawyers practicing today as in-house counsel or in law firms would be in violation of the breach, in a breach of the rules of professional conduct. I did a quick search of the Bay Area, San Francisco Chronicle top 100 companies, and I made it through number 25, coming up with, just by their website bios, I think seven general counsels for Wells Fargo. His prior position was vice president and general counsel of Northwest Corporation, a competitor. Unical's vice president and general counsel was previously with Skadden Arps working in the, also in the same field, and general counsel of Mobile Corporation. I could go through the whole list, but it starts from top to bottom. If their rule were to be applied, once you acquired information about a company in a field, you would be prevented from working in that field ever again. If the field were broader, like a bank that has national banking and is also highly regulated, you'd be prevented from ever working for, as in-house counsel or in a law firm, a competitor bank, which means any bank. That's not the standard that's applied anywhere. The rules of professional conduct and the statute itself talk about the same or substantially related matter and material adversity. On material adversity, it's essentially undisputed, and the Court properly noted, that there's no information in the record, and we sought discovery to have them produce information to tell us in which, ways in which Mr. Meek has competed, directly or indirectly. The Court went so far as to make a third order ordering them to produce that information. We put their responses in the record. There is no material adversity. There is no adversity. Judge Ilston went farther and assumed that there was competition so that she could get to the second issue, whether there's a substantial relationship. I say to you what I said to Judge Ilston and what we had sought discovery on for two years. What is the matter at issue that Mr. — when Mr. Meek was employed by plaintiffs that is relevant today? We spent time going around and around getting multiple discovery orders for plaintiffs to compel them to identify that information. They were compelled to do it on numerous occasions. It's only when we get to the reply brief here that we see, and I'll read you again, appellants seek nothing beyond that which any client has a right to expect, that his former attorney will not accept adverse employment. That's not the standard. The standard, as we've talked about, includes material adversity or the same or substantially related matter. In the briefs, there's a lot of discussion about what is a substantially related matter. The rules themselves provide a definition for substantial. Substantial, when used in reference to a degree or extent, denotes a material matter of clear and weighty — I was just telling your brief, you know, we've read your brief, so. Yes, Your Honor. I submit to the Court, then, that there is no matter which we are to investigate and to compare. All of the cases from any jurisdictions, no matter whether you go with the Second Circuit, which is the highest standard, or the other circuits that are lower, there is no case law anywhere in which a court has analyzed what they are asking you to analyze, simply employment versus other employment. Furthermore, the — on the issue of adversity, the — we went round and round. Only when we got to the summary judgment motion was it that plaintiffs conceded that no business information is at issue in this case. None. No trade secrets, no business information of any kind. It's only attorney-client communications, they claim, which they won't identify. The problem with that is, you only get to preserve and not disclose your attorney-client communications in a motion to disqualify if you first establish that there is a matter that is substantially related to a current matter, a former matter substantially related to a current matter. They're putting the cart before the horse. They want you to assume that there are communications that are relevant, without So with that, I finish with a quick mention of Rule 56F, which you inquired about. This is a case in which discovery had gone on long. Trial was set. Summary judgment was heard on June 12th. Disclose of discovery was at the end of June. There was no pending discovery from Mr. Meek. He had appeared for two full days of deposition, answered all their discovery, document requests, interrogatories. The only outstanding issue and the only outstanding discovery at the time of the summary judgment motion, which, by the way, we had given them notice for eight months that we would be bringing at the earliest opportunity, we then waited in a three-month period from which we could have first brought it to allow them to depose the Mr. Dyer, who is chairman of the board and also the president of Mr. Meek's current employer, and they did that. They deposed Mr. Dyer twice. So when we finally brought the motion for summary judgment, there was no pending discovery. The pending discovery that they claim and on which they want to seek a continuance is a motion to compel filed with an Arizona court about depositions that occurred in March and April that they sat on their hands for many months and they literally filed their motion to compel with the Arizona court the day before the summary judgment hearing. That motion wouldn't have even been heard until after the close of discovery in our case. So this is beyond willful delay, and even if you put aside the willful delay, there's no reason to believe that the discovery would have the motion, even if it were granted and we don't know the terms of it, they didn't put it in the record, and even if that it compelled some information, that it would make any difference because it would have occurred after the close of discovery. Furthermore, the discovery that they talk about in vague terms is discovery of competition. As we know, Judge Yeltsin assumed competition, but granted our motion in any case. Thank you, Your Honor. Thank you, counsel. We'll give you two minutes. Thank you very much, Your Honor. I believe that the standard that has been stated here has created a couple of red hearings by Mr. Noyce. Mr. Noyce says that the standard is that you have to have an identifiable matter and that unless you have an identifiable matter, that there's no way that you can have the substantial relationship test. That is not the law. He says that we can't find any law, we haven't shown any law that says otherwise. We most certainly have, and it's from this circuit and other circuits. The Chugach case, which we've cited, which is this circuit, back in 1966, there was a general counsel that served for three years, both as general counsel and consultant role, ultimately later on was hired by the trustee in bankruptcy to take an interest in litigation where he had had some exposure to the matters previously. And this Court pointed out that whether the real standard was whether the counsel was in a position to acquire knowledge casting light on the purpose of the later acts and agreements. In other words, it's not a specific identifiable matter. It was the role, the looking at the comparison of the roles. The Damron case, the Maritrans case, we have cited those. I wish to quickly address the issue of Rule 56F, which I should have addressed in opening. The we are in the unusual situation. Most attorneys who are arguing, well, we would have gotten something from Rule 56F have to rely on complete speculation as to what was out there. Through the related appeal, the 60B appeal, we know exactly what the answer now would have been to the questions where we were denied the discovery, such as what are your plans to compete. We now know that the answer would have been, we intend to open up a full competing business and Mr. Meek will be going to brokers and trying to and soliciting them to get that brokerage and the entire book of business of the plaintiff companies. I believe that that would have been extremely valuable discovery that would have borne on all of the issues of the case. I think we had made the showing prior to it, and in one sense, the Rule 56F is something of a red herring, because the real test here, Your Honors, unless you're going to overturn Chugash, Damron, and the various cases all over the place which say you don't look to the confidences, you don't have to show what's in the confidences. I understand the discomfort that the Court is expressing, but I say that the Court should not abandon a longstanding line of cases that say we do not require the client to have to show what was in the confidences to get the injunctive relief against the attorney. And that is what I believe that the district court's opinion essentially stands for. We made sufficient showing to be allowed to go to trial, and with that, I'll submit it. Thank you, counsel. We'll take a 10-minute break before hearing the last case on the oral argument.
judges: Thomas, W. Fletcher, Mahan